376 S.E.2d 140

**Robert Carl CRAIN, et al.**

v.

**Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al.**

**No. 16646.**

Supreme Court of Appeals of West Virginia.

Nov. 30, 1988.

Rehearing Denied Dec. 21, 1988.

Schrader, Stamp, Byrd, Bryum & Companion, James F. Companion, William D. Wilmoth, Barbara L. Baxter, Wheeling, for appellant.

Silas B. Taylor, Deputy Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

This proceeding originated in a consolidated action for habeas corpus instituted by the plaintiffs in 1981 to secure relief from conditions of imprisonment at the West Virginia Penitentiary in Moundsville. On June 10, 1981, the Honorable Arthur M. Recht of the First Judicial Circuit was appointed to conduct the hearings and trial on the issue of whether the conditions of confinement at the West Virginia Penitentiary were unconstitutional as cruel and unusual punishment under the Eighth Amendment

to the Constitution of the United States and Article III, Section 5 of the Constitution of the State of West Virginia. On June 21, 1982, the circuit court ruled that when considered in the totality, the conditions of confinement violated the constitutional prohibition against cruel and unusual punishment. The court gave the Department of Corrections 180 days to develop a remedy to bring the totality of the conditions up to a constitutional standard. The court also incorporated into the Final Order the Consent Decree agreed to by the parties, which encompassed the various prison policies and the appointment of a Special Master (now identified as a Monitor), whose duties would be to monitor the implementation of and compliance with the Final Decree. No appeal was taken from the court's finding that the conditions of confinement at the West Virginia Penitentiary were unconstitutional.

In 1983, the Honorable John Bronson replaced Judge Recht as the presiding officer in this case. On September 1, 1984, Judge Bronson approved the Compliance Plan submitted by the Department of Corrections. The appellants disagreed and appealed only the issue relating to whether the Compliance Plan comported with the original findings and order of Judge Recht.

We addressed that issue in the original case of *Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986), where we held the Compliance Plan did not meet the requirements of the Final Order of Judge Recht. After an extensive review of the Compliance Plan to determine if it comported with the Final Order, we found that it did not in all aspects. Therefore, we appointed a Special Master (a person separate and apart from the Monitor formerly identified as a Special Master) to review a revised Compliance Plan to be submitted by the Department of Corrections within 120 days and to make a report to the Court with comments and recommendations about the revised Compliance Plan and the conditions of the penitentiary.[1] The plan was submitted in September, 1986.

The revised Compliance Plan detailed several procedures designed to bring the Penitentiary to constitutional standards in compliance with the Final Order. In his report, the Special Master, Patrick D. McManus, reviewed the revised Compliance Plan and recommended that a new facility be built to be in use by July 1, 1992. In essence, Mr. McManus concluded that the Moundsville facility, built in 1863, was incapable of complying with the constitutional requirements even with additions and corrections. After reviewing the Special Master's report, along with the parties' briefs and Judge Recht's findings, we find that all parties concur that in order to bring the West Virginia Penitentiary up to constitutional standards, a new facility must be built.

Although both parties agree that a new facility would correct most of the deficiencies, the Department of Corrections has been unable to act upon the recommendation. The Department responded that the funds necessary to build the facility were "not available out of appropriations historically available to the Department, and therefore, such a decision cannot be made at a Department level."[2] Given the decreasing amount of funding, the appellees concluded the Department was in no position to embrace the Special Master's recommendation.

We will not reiterate the appalling conditions found at the West Virginia Penitentiary. We adequately described the dismal ruin in the first *Crain* opinion. Suffice it to say that the conditions have not improved, nor has the situation become any less unconstitutional since we last directed

1. *See also Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981), where we held the Department of Corrections had a statutory duty to establish and maintain rehabilitation programs for inmates which comply with the standards set by the American Correctional Association and the Commission on Accreditation for Correction.

2. The appellee's response notes a certain "cash flow" problem due to a spending reduction imposed by Governor Moore. The appellees report the department was currently operating on a budget of approximately $3,000,000 less than the monies appropriated due to the cash flow problem.

the Department of Corrections to remedy the problems. If possible, the conditions have deteriorated even more.

Consequently, we find ourselves again faced with the dilemma of how to fulfill our duty to uphold the Constitutions of the United States and West Virginia. In our original *Crain* opinion, we concluded that "[c]onfronted as we are with this task, we decline to abandon it to our brethren in the federal system as we would then concede our inability to do our constitutional duty." 176 W.Va. at 364, 342 S.E.2d at 449.[3] However, our original attempt to correct the problem has resulted in no material change in conditions. Neither the Legislature nor the Governor has taken any substantive action to correct the problem.[4]

This Court is well aware that the State of West Virginia has been suffering through a period of great economic distress. The day-to-day tasks of balancing the budget and meeting the obligations of the State has been a serious problem for both the legislative and executive branches of government. It is understandable that the correction of the conditions that exist at the State Penitentiary have not been a major priority: it is difficult to concentrate on the conditions at the Penitentiary when faced with the problems of unemployment, educational competency, economic development, and a dwindling tax base. We point out, however, that the action before us was not initiated by this Court, and the parties before us are entitled to a determination of the questions raised in their petition. All three branches of the government of this State have affirmatively stated that the totality of the situation at the State Penitentiary at Moundsville makes confinement there cruel and unusual punishment, and is therefore unconstitutional.

If we fail to act now, after more than eight years of waiting for the legislative and executive branches to act to solve the problem, we would be abdicating our responsibility to uphold and guard the Constitutions of the United States and West Virginia. We decline to abandon the task of correcting the unconstitutional conditions at the Penitentiary to the federal court system. Given the facts of this case, we believe we can do no less than set in motion the procedures that will eliminate the unconstitutional conditions. We can only hope that with the beginning of a new legislative session and the election of a new executive, action will be taken to construct a new facility that will meet constitutional standards. We concur with the report of the Special Master where he finds a new facility must be constructed, and, therefore, we order that the State Penitentiary at Moundsville be closed by July 1, 1992.

This Court is not unmindful of the extraordinary nature of our order closing the penitentiary by July 1, 1992. Our action, however, is clearly a lesser evil than the relief prayed for by the petitioners—their release from the penitentiary because of the unconstitutional conditions of confinement. We feel compelled to point out that the release sought by the petitioners may be the only remaining alternative to this Court after July 1, 1992, if the conditions of confinement are not remedied.[5]

3. Federal courts will not hesitate to intervene when the action is clearly necessary to protect a prisoner's constitutional rights. *Newman v. State of Alabama,* 349 F.Supp. 278 (M.D.Ala. 1972). In *Newman,* the court noted that a prisoner retains, among other constitutional safeguards, the Eighth Amendment's prohibition against cruel and unusual punishment. *See also Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *Campbell v. Beto,* 460 F.2d 765 (5th Cir.1972).

4. The Legislature came to a similar conclusion on January 11, 1982, when the Joint Committee on Government and Finance recommended the construction and renovation of the West Virginia Penitentiary in phases beginning in fiscal year 1983 by requesting the Governor to include in the 1983 fiscal budget the sum of $10,000,000 to begin the process. The Committee went so far as to recommend an architect be hired to draw up plans. Again in March of 1986, the Legislature addressed the deplorable conditions at the West Virginia Penitentiary, describing it as dilapidated and obsolete, and calling for a study on renovation and reconstruction needs. On both occasions, however, the recommendations were dropped.

5. In his dissenting and concurring opinion in *State ex rel. Dodrill v. Scott,* 177 W.Va. 452, 352 S.E.2d 741 (1986), Justice Neely discussed the choices available to this Court when faced with this constitutional dilemma: "... because our

■ This Court has authority to place the penitentiary in receivership and appoint a receiver for the purpose of constructing a new facility.[6] Article 6, Chapter 5 of the Code of West Virginia, State Building Commission, sets up statutory provisions for the financing and construction of State buildings. Chapter 5, Article 6, Section 4, Power of the Commission, states as follows:

> The Commission shall have power:
>
> (10) To construct a building or buildings on real property, which it may acquire, or which may be owned by the state of West Virginia, in the city of Charleston, as convenient as may be to the capitol building, together with incidental approaches, structures and facilities, subject to such consent and approval of the city of Charleston in any case as may be necessary; and, in addition, to acquire or construct a warehouse, including office space therein, in Kanawha county for the West Virginia alcohol beverage control commissioner, and equip and furnish the same; *and to acquire or construct, through lease, purchase, lease-purchase, or bond financing, hospitals or other facilities, buildings, or additions or renovations to buildings as may be necessary for the safety and care of patients, inmates and guests at facilities under the jurisdiction of and supervision of the department of health and at institutions under the jurisdiction of the department of corrections; and to formulate and program plans for the orderly and timely capital improvement of all of said hospitals and institutions and the state capitol buildings* ....

(emphasis added). This section also provides for entering into agreements for the sale of bonds and the refinancing of outstanding bonds, the maintenance, construction and operation of projects, and for the charge of rent to pay for the cost of construction.

■ Consistent with our duty to enforce the Constitution, this Court could issue a writ of mandamus granting to the receiver the powers granted the State Building Commission with the parallel requirement that the State Building Commission provide the necessary financing. We recognize that the construction of a new facility will involve financing, possibly in excess of

---

prisons do not pass federal standards and for that reason alone we have one of two choices: Either we must release a significant number of our inmates upon an unsuspecting world, or we must build new facilities." 177 W.Va. at 463, 352 S.E.2d at 751 (citations omitted).

6. The appointment of receivers and special masters for the purpose of monitoring and implementing corrective orders has received the tacit approval of the United States Supreme Court. In *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978), the United States Supreme Court reviewed a case where a plaintiff-inmate contended the conditions of confinement were unconstitutional. The district court agreed and made the State of Alabama and the Alabama Department of Corrections part of an injunction aimed at correcting the conditions. The Fifth Circuit affirmed in part, and the State appealed the case to the United States Supreme Court. The Supreme Court remanded the case with directions to dismiss the State of Alabama and the Alabama Department of Corrections as the district court's injunction violated the State's Eleventh Amendment immunity. More significantly, however, Justice Stevens noted in his dissent that "[t]he Court does not question the propriety of the injunctive relief entered by the District Court and upheld by the Court of Appeals." *Id.* at 783, 98 S.Ct. at 3058, 57 L.Ed.2d at 1117. For a review of the procedural history of *Pugh, see Newman v. Alabama*, 349 F.Supp. 278 (M.D.Ala.1972); *Pugh v. Locke*, 406 F.Supp. 318 (M.D.Ala.1976); *Newman v. Alabama*, 559 F.2d 283 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

See also, *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir.1982), *cert denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983), in which the Fifth Circuit approved the appointment of a special master, who was charged with the implementation of the district court's order. The Fifth Circuit noted the district court found the authority to appoint the master through Fed. R.Civ.P. 53 and its inherent power as a court of equity. 679 F.2d at 1159. For subsequent history, *see Ruiz v. Estelle*, 688 F.2d 266 (5th Cir. 1982). In *Morgan v. McDonough*, 540 F.2d 527 (1st Cir.1976), the First Circuit appointed a temporary receiver to monitor compliance with desegregation orders in a racially troubled high school. In *Inmates of Attica Correctional Facility v. Rockefeller*, 453 F.2d 12 (2nd Cir.1971), the Second Circuit appointed federal monitors to implement an injunction against brutality. In *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974), the Fifth Circuit approved a plan which utilized a single monitor.

$50,000,000, and therefore will entail a substantial amount of planning. For that reason, we do not choose to issue a writ of mandamus at this time. In the same spirit of cooperation, we also suggest to the State Building Commission that it voluntarily refrain from entering into any new contracts or agreements to purchase, lease, lease-purchase, or rent any real estate for which it is not, as of this date, making payments. This restraint will enable those responsible for the state government in the next four years the opportunity to analyze the situation and, through the answer to a rule to show cause, explain how and why it is not necessary for this Court to intervene. This Court emphasizes, however, that action must be taken *now* by the Legislature and Governor if the construction of a new penitentiary is to be completed by July 1, 1992, in order to house those inmates then residing in the West Virginia Penitentiary or those that have been ordered transferred there. Repairs, alterations, or any plan which attempts to renovate the present structure are not acceptable.[7]

In view of the fact that the possible action of the Court involves parties not presently before it and under the original jurisdiction of this Court in habeas corpus and the specific authorization granted to this Court by W.Va. Const., Art. VIII, § 3 to determine the constitutionality of a law, it is ordered that Arch A. Moore, Jr., as Governor and as Chairman of the State Building Commission, Ken Hechler, Secretary of State, as Secretary of the State Building Commission, Charlie Brown, Attorney General, as a member of the State Building Commission, A. James Manchin, Treasurer, John S. Moore, William T. Milleson, C. Joe Mullen, Forest H. Kirkpatrick, as members of the State Building Commission, Dan Tonkovich, President of the State Senate, for and on behalf of himself and other members of the State Senate, Robert C. Chambers, Speaker of the House of Delegates, for and on behalf of himself and other members of the House of Delegates, Glen B. Gainer, Auditor, and John F. McCuskey, Commissioner of Finance and Administration, individually and in their official capacities, are made parties to this action.

Having set forth the views of this Court as to the options available to correct the unconstitutional conditions, we now issue a rule to show cause against all appellees, including those persons made parties above, as to why we should not place the penitentiary in receivership, grant the receiver power to construct a new facility and issue a writ of mandamus requiring the State Building Commission to provide for the financing of the construction of the new facility. The rule shall be returnable on the 2nd day of May, 1989.

A copy of this opinion shall be served on each of the appellees and that shall be notice of the rule to show cause issued hereunder.

WRIT GRANTED AS MOULDED.

---

7. As Justice Neely stated in his concurring and dissenting opinion in *Scott, supra* at note 5, "[t]he fact of the matter is that we are currently spending almost as much money renovating and otherwise operating obsolete facilities as we would need to appropriate each year to retire the indebtedness on a new prison.... But we are currently pouring money down a rathole." 177 W.Va. at 463, 352 S.E.2d at 751-52 (footnotes omitted).