382 S.E.2d 68

**Robert Carl CRAIN, et al.**

v.

**Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al.**

**No. 16646.**

Supreme Court of Appeals of
West Virginia.

June 16, 1989.

## IV

Schrader, Stamp, Byrd, Byrum & Companion James F. Companion, William D. Wilmoth, and Barbara L. Baxter, Wheeling, for Robert Carl Crain, et al.

Silas B. Taylor, Atty. General's Office, Charleston, for Donald E. Bordenkircher.

PER CURIAM:

On November 30, 1988, this Court issued a rule in the above-captioned proceeding requiring the respondents[1] to show cause why we should not place the West Virginia Penitentiary (WVP) at Moundsville in receivership, grant the receiver the power to construct a new facility, and issue a writ of mandamus requiring the State Building Commission to provide financing for the construction of a new facility. The respondents appeared before this Court on May 2, 1989, to respond to the rule to show cause. *See Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988) (*Crain II*).

This proceeding originated in 1981 when inmates at WVP filed habeas corpus petitions requesting relief from their conditions of confinement, which they alleged constituted cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States and Article III, Section 5 of the West Virginia Constitution. These petitions were consolidated and the Honorable Arthur M. Recht, Judge of the First Judicial Circuit, was appointed by this Court on June 10, 1981, to conduct a hearing on this issue.

After a number of hearings, the circuit court on June 21, 1983, issued an opinion in which it detailed the deplorable conditions at WVP and ruled that, when considered in their totality, the conditions of confinement at WVP were unconstitutional as cruel and unusual punishment. The Department of Corrections was ordered by the circuit court to submit within 180 days a plan to bring the conditions of confinement at WVP within constitutional standards. The circuit court also incorporated a consent decree as part of its final order which provided for the appointment of a special master (now identified as a monitor) to oversee the implementation of the directives of the final decree. The Department of Corrections did not appeal the court's finding that the conditions of confinement at WVP were unconstitutional.

The Honorable John F. Bronson replaced Judge Recht as a presiding judge in this case in the fall of 1983. The Department of Corrections submitted to Judge Bronson a compliance plan which, by an order dated September 1, 1984, was approved. Judge Bronson's order was appealed by the inmates on the ground that certain portions of the Department's compliance plan did not satisfy the requirements of the final order issued by Judge Recht. This Court held in *Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986) (*Crain I*), that the Department's compliance plan was not adequate to correct the unconstitutional conditions and gave specific reasons as to why this was true. In *Crain I*, we appointed an acknowledged expert to act as Special Master to approve a revised compliance plan to be submitted by the Department within 120 days. The Department, after obtaining a forty-five day extension, submitted the plan in September, 1986.

Upon a thorough review of the revised compliance plan, the Special Master, Patrick D. McManus, submitted a report to this Court in January, 1988, rejecting the revised compliance plan, and recommended the construction of a new facility to be in use by July 1, 1992. We offered the parties an opportunity to comment on the Spe-

---

1. Carl Legursky now serves as Warden at the West Virginia Penitentiary at Moundsville.

cial Master's report. Ultimately, the matter was set for hearing on September 13, 1988, before this Court. This hearing became the subject of *Crain II*, where we stated:

"Although both parties agree that a new facility would correct most of the deficiencies, the Department of Corrections has been unable to act upon the [Special Master's] recommendation. The Department responded that the funds necessary to build the facility were 'not available out of appropriations historically available to the Department, and therefore, such a decision cannot be made at a Department level.'" 180 W.Va. at 247, 376 S.E.2d at 141. (Footnote omitted).

The inability of the Department to comply with the recommendation of the Special Master necessitated this Court's issuance of a rule to show cause in *Crain II, supra,* with regard to the appointment of a receiver for the construction of a new facility.

In their response to this rule to show cause, the respondents now submit that this Court should not appoint a receiver for the construction of a new penitentiary because the Governor and the Legislature believe that they will be able to replace the current facility by the Court's July 1, 1992 deadline. A great deal of emphasis is placed on the recently enacted Senate Bill 389 relating to the West Virginia Regional Jail and Correctional Facility Authority, which is basically a recodification of the provisions of W.Va.Code, 31–20–1, *et seq.*

(1985).[2] In the last paragraph of W.Va. Code, 31–20–5 (1989), there is language which requires the regional authority to submit by November 1, 1989, a "plan to the joint committee on government and finance of the Legislature detailing the means by which the authority will comply with the mandates of the Supreme Court of Appeals as to the structural and internal conditions and programs of the correctional facilities in this state."[3]

As commendable as this legislation may be, we must observe that the Court's mandate does not run to the regional jail authority, as it is not a party to this litigation. Over three years have passed since we issued our opinion in *Crain I,* and some six years have elapsed since the final order of Judge Recht which declared the penitentiary conditions to be unconstitutional. This finding of unconstitutionality was never challenged by the State. As we pointed out in *Crain I* "the [trial] court's findings as to unconstitutional conditions are not at issue on this appeal." 176 W.Va. at 342, 342 S.E.2d at 426.

In the years since Judge Recht's order, this Court has deferred to the Governor and the Legislature to formulate an adequate proposal to rectify these deplorable conditions.[4] Some six months ago in *Crain II,* we emphasized "that action must be taken *now* by the Legislature and the Governor if the construction of a new penitentiary is to be completed by July 1, 1992," 180 W.Va. at 250, 376 S.E.2d at 144

---

**2.** Senate Bill 389 revised W.Va.Code, 31–20–1, *et seq.* and was enacted on April 8, 1989, and made effective the same day. It abolished "The West Virginia Regional Jail and Prison Authority" and created what is termed "The West Virginia Regional Jail and Correctional Facility Authority." Except for changes in the makeup of the governing board and the right of the governor to appoint the executive director, most of the new act follows the older provisions in W.Va. Code, 31–20–1, *et seq* (1985). The earlier act provided that the authority "shall complete a comprehensive study of all prison and jail facilities in the State of West Virginia no later than the first day of July, one thousand nine hundred eighty-six." W.Va.Code, 31–20–5 (1985). A report was prepared, but it dealt with WVP in

only a cursory fashion and provided no remedial suggestions.

**3.** The term "correctional facility" is defined in W.Va.Code, 31–20–2(m) (1989), as "any correctional facility, penitentiary, detention center or other correctional institution operated by the department of corrections."

**4.** In *Crain I,* we pointed out that the conditions found by Judge Recht could not be deemed a surprise, as we quoted at some length from the report of the Joint Legislative Committee on Government and Finance dated January 11, 1982, which recognized the deteriorated condition of the penitentiary. 176 W.Va. at 353–54, 342 S.E.2d at 437–38.

(emphasis in original), and concluded in Syllabus Point 2:

> "This Court has a duty to take such actions as are necessary to protect and guard the Constitution of the United States and the Constitution of the State of West Virginia." [5]

■ We are willing to defer again to accommodate another submission of a plan. However, such a plan must contain specific proposals. We require that a site be identified and that general site and architectural plans be submitted so that our Special Master, Mr. McManus, may be able to evaluate the adequacy of the facility and the number of inmates that will be housed therein. Furthermore, the approximate cost of the facility should be given together with a financing plan and the planned construction timetable. We have in the past made our Special Master available for consultation, and we will continue this policy in the hope of a speedy resolution of this matter.

Finally, we require that this submission be made to our Special Master by November 14, 1989, and we will set this matter for further hearing before this Court on January 9, 1990.

Writup granted as moulded.

---

**5.** This point was more fully elaborated upon in *Crain I,* 176 W.Va. at 364, 342 S.E.2d at 449: "Many courts have reiterated the thought expressed in *Bounds v. Smith,* 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72, 81 (1977), that the economic 'cost of protecting a constitutional right cannot justify its total denial.' We elaborated on this theme in *Cooper v. Gwinn,* 171 W.Va. [245] at 256–57, 298 S.E.2d [781] at 793 [1981]

'The incarceration of individuals who have broken society's laws is a public act for which the people through their government must take ultimate responsibility....

'In recognition of this responsibility, our Legislature has said that inmates incarcerated in state prisons shall be rehabilitated through programs of classification, education and treatment. A plea of lack of funds is an insufficient justification for the failure of the executive department to implement this mandate. "Politically motivated pleas of public poverty cannot be used to brush aside the fundamental duties of government to the maintenance of civilization...." *Moore v. Starcher,* [167 W.Va. 848, 853, 280 S.E.2d 693, 696 (1981)].'"