392 S.E.2d 227

**Robert Carl CRAIN**

v.

**Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al.**

**No. 16646.**

Supreme Court of Appeals of West Virginia.

April 13, 1990.

---

James F. Companion, William D. Wilmoth, Barbara L. Baxter, Schrader, Stamp, Byrd, Byrum & Companion, Wheeling, for Robert Crain.

Roger W. Tompkins, Atty. Gen., Dana David, Chief Deputy Atty. Gen., Thomas J. Gillooly, Sr. Deputy Atty. Gen., Charleston, for Donald E. Bordenkircher, Warden, West Virginia Penitentiary.

PER CURIAM:

This proceeding originated in 1981 when inmates at the West Virginia Penitentiary (WVP) at Moundsville filed habeas corpus petitions requesting relief from their conditions of confinement, which they alleged constituted cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States and Article III, Section 5 of the *West Virginia Constitution.* These petitions were consolidated, and this Court appointed the Honorable Arthur M. Recht, Judge of the First Judicial Circuit, to conduct a hearing on this issue.

Following several hearings, the circuit court ruled that, when considering the deplorable conditions at the WVP in their totality, the conditions of confinement were unconstitutional as cruel and unusual punishment.[1] The circuit court ordered the Department of Corrections to submit within 180 days a plan to correct the unconstitutional conditions of confinement at the WVP. The circuit court also incorporated a consent decree into its final order which provided for the appointment of a Special Master (who is now identified as a Monitor) to oversee the implementation of the mandates of the final decree.

In the fall of 1983, Judge Recht was replaced by the Honorable John F. Bronson. The Department of Corrections submitted a compliance plan to Judge Bronson who approved it by order dated September 1, 1984. This order, however, was appealed by the inmates on the basis that the compliance plan failed to satisfy all the requirements of the final order issued by Judge Recht. Thus, in *Crain v. Bordenkircher,* 176 W.Va. 338, 342 S.E.2d 422 (1986) (*Crain I*), we held that the compliance plan failed to meet the detailed provisions contained in Judge Recht's final order. We, therefore, appointed a Special Master (a person separate and apart from the Monitor formerly identified as a Special

---

1. The problems with the physical environment at the WVP included: (1) insufficient living space; (2) unsanitary and inadequate plumbing, heating and ventilation; (3) infestation of vermin and insects; (4) inadequate natural and artificial lighting; (5) lack of cleaning supplies and equipment; (6) noncompliance with existing fire codes; (7) foul odors; and (8) inadequate bedding.

Master) to review a new compliance plan to be submitted in accordance with the dictates of that order within 120 days. We also continued the use of the Monitor to ensure that compliance was being made.[2] The Department, after obtaining a forty-five day extension, submitted the revised compliance plan in September, 1986.

Upon review of the revised compliance plan, the Special Master, Patrick D. Mc-Manus, rejected the plan and recommended the construction of a new facility to be in use by July 1, 1992. The parties were offered an opportunity to comment on the Special Master's report, and this matter was scheduled for a hearing on September 13, 1988. Although the Department agreed that a new facility would correct most of the deficiencies, the Department was unable to act upon the Special Master's recommendation. The inability of the Department to comply with the Special Master's recommendation necessitated this Court's issuance of a rule to show cause in *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988) (*Crain* II), why this Court should not place the WVP in receivership. The respondents appeared before this Court on May 2, 1989, to respond to the rule to show cause.

In response to the rule to show cause, the respondents submitted that a receiver should not be appointed for the construction of a new penitentiary because the governor and the legislature believed that they would be able to replace the current facility by the Court's July 1, 1992 deadline. Therefore, in *Crain v. Bordenkircher*, 181 W.Va. 231, 382 S.E.2d 68 (1989) (*Crain* III), we deferred rendering a decision as to whether the WVP should be placed in receivership, and required a plan to be submitted to the Special Master by November 14, 1989. We scheduled this matter for further hearing on January 9, 1990.

The parties appeared before this Court on January 9, 1990, and represented that a plan had been submitted and approved by the Special Master. This Court, therefore, accepted the plan, recognizing a need for continued review of its implementation, and scheduled this matter for hearing on April 3, 1990, so that we could receive a progress report. *Crain v. Bordenkircher*, (No. 16646, March 13, 1990) (*Crain* IV).

The parties appeared before this Court on April 3, 1990, to provide a status report on the progress made to implement the plan for the replacement of the WVP. The respondents represent that a nine hundred and twenty six (926) bed maximum/medium security facility will be constructed in Fayette County, and that a joint regional jail/medium security facility will be constructed in Marshall County. The Marshall County facility will include one hundred (100) beds for medium security prisoners. The respondents further submit that the recently enacted Senate Concurrent Resolution No. 30 authorizes the issuance and sale by the Regional Jail and Correctional Facility Authority (Authority) of revenue or lease/purchase bonds or other obligations permitted by *W.Va.Code*, 31-20-1, *et seq.*, or other financing or financings permitted by the *W.Va.Code*, in an amount sufficient to fund the construction of a replacement for the WVP in Fayette County, and the replacement of a northern regional jail and correctional facility in Marshall County. The renovation and expansion of the Huttonsville Correctional Center, the Pruntytown Correctional Center, the Anthony Correctional Center, and work release centers would also be funded.

The respondents also emphasize the recent enactment of Senate Bill 609, which provides a means for financing these projects by: (1) increasing the maximum aggregate amount of indebtedness the Authority may issue; (2) increasing fees for

---

2. In the final order and in *Crain I,* the "discrete violations" found at the WVP were outlined, which included: (1) inadequate and unsanitary food services; (2) constitutional violations in the WVP's internal disciplinary policies; (3) deficient medical, dental and psychiatric care; (4) an inadequate law library; and (5) the conditions of administrative segregation. The Moni-

tor is responsible for overseeing the correction of these problems, and reporting his findings to the circuit judge. The result in this case, of course, does not affect the continuing authority of the circuit judge by order to correct problems relating to such matters as administrative segregation and the like pending the completion of the proposed penitentiary.

filing civil actions in circuit and magistrate courts; (3) creating a filing fee schedule for civil actions in magistrate courts; (4) increasing costs charged in criminal proceedings in circuit, magistrate, and municipal courts; and (5) requiring the payment of increased amounts of such fees and costs into the regional jail and prison development fund. In addition, the respondents represent that the Authority has issued a request for approval (RFP) for a company to design and administer the construction of the Fayette County facility, the expansion and renovation of the Pruntytown Correctional Center, and the Huttonsville Correctional Center. Another RFP has also been issued by the Authority for a company to design and administer the construction of the northern regional jail and correctional facility in Marshall County. The respondents state that the bids received as a result of these RFPs will be opened on April 18, 1990, and a contract will be awarded in May, 1990. The Authority has also held public hearings regarding these projects in Fayette and Marshall Counties.

In both *Crain II* and *Crain III*, we strongly emphasized that the governor and the legislature had to immediately take action in order to ensure that the construction of the new facility is completed by July 1, 1992, and we concluded in syllabus point 2 of *Crain II* and the syllabus of *Crain III:* "This Court has a duty to take such actions as are necessary to protect and guard the Constitution of the United States and the Constitution of the State of West Virginia."

Upon review of the status report provided by the respondents, we find that the State is progressing as it should to comply with the mandates of this Court. Furthermore, we find that the Director of the Department of Safety and the West Virginia Regional Jail and Correctional Fa-

cility Authority should be made parties to this proceeding, and that the Special Master, the Monitor and petitioners' counsel should be provided an opportunity to examine and to comment on the respondents' plans for these new facilities.[3] We shall, therefore, place this case on the January, 1991 docket.

Writ granted as moulded.

---

3. On April 6, 1990, pursuant to Rule 17 of the Rules of Appellate Procedure, the respondents moved to have the Secretary of the Department of Safety, and the Chairman, Executive Director, and members of the West Virginia Regional Jail and Correctional Facility Authority joined as parties to this proceeding. The respondents also requested that this Court permit the Special Master, the Monitor and the petitioners' counsel to review and comment on the respondents' plans for these new facilities. We determined that both motions should be granted since (1) the individuals sought to be joined as parties are responsible for preparing and implementing the building plans for the replacement facilities; and (2) the Special Master, the Monitor and petitioners' counsel should review the respondents' plans to ensure that they satisfy the mandates of this Court.