408 S.E.2d 355

**Robert Carl CRAIN, et al., Appellant,**

**v.**

**Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al., Appellees.**

**No. 16646.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 1991.

Decided July 25, 1991.

capacity.

James F. Companion, William D. Wilmoth, Barbara L. Baxter, Schrader, Byrd, Byrum & Companion, Wheeling, for appellants.

Rita Stuart, Asst. Atty. Gen., Charleston, for appellees.

## PER CURIAM:

This proceeding was instituted in 1981 by inmates at the West Virginia Penitentiary, who contended that their confinement in that penitentiary constituted cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States and Article III, § 5 of the West Virginia Constitution. It has been subject of a series of opinions and orders outlined in *Crain v. Bordenkircher*, 182 W.Va. 787, 392 S.E.2d 227 (1990).

In the early stages of the proceedings, the Court concluded that confinement in the existing penitentiary at Moundsville constituted cruel and unusual punishment. To remedy the situation, the respondents elected to erect new penitentiary facilities, to be known as the Mount Olive Correctional Complex in Fayette County, West Virginia. In the above opinion, this Court found that the respondents were attempting to comply with this Court's mandates. The Court, however, placed the matter on the January, 1991, docket to insure that further appropriate progress was made toward opening the new penitentiary facilities.

On January 8, 1991, the respondents submitted a status report relating to the progress made toward the construction of the Mount Olive Correctional Complex. That report showed that the respondents had prepared a master operational and architectural program for the new facility and had made proposals relating to housing, programs, and support services. Architectural plans had been prepared and some site preparation had been undertaken.

The report further indicated that the issuance of bonds to finance several correctional projects, including the new penitentiary, had been authorized by Senate resolution. A number of the bonds had been issued and sold, and funds earmarked for the new penitentiary had been transferred to a bank trustee.

It appears that certain objections were raised to the architectural proposals, and the matter was referred to this Court's Special Master. Upon referral to the Special Master, the respondents filed additional information and altered the proposal in a manner to make it acceptable to the master. The master, upon examination of the new submissions, concluded that the proposed plan was acceptable.

In his latest review of the situation, the Special Master reported that on April 16, 1991, the final "In Process Review" of the architectural plans for the new Mount Olive Complex had been completed and indicated that the plans were generally acceptable.[1] However, at the time of the final review, cost estimates were not yet available. When the cost estimates were received on April 25, 1991, it was determined that costs would exceed the amount budgeted for the complex. Since that time, efforts have been completed to bring the costs and budgeted amounts into balance. The efforts include modification of the architectural plans. The Special Master advises that a funding commitment has been made by the West Virginia Regional Jail and Correctional Authority, through its supervising officer, the Secretary of the Department of Safety.

---

**1.** The Special Master's report indicated that technical issues relating "to site preparation, design, engineering and the like" were beyond his expertise. His review was confined to the adequacy of the architectural plans to ensure that they were sufficient to provide a constitutionally adequate physical facility.

As a consequence of the actions taken by the respondents, the Special Master has recommended that this Court approve the architectural plans submitted, subject to modification for budgetary purposes contained in the architect's letter dated July 9, 1991.[2] The Special Master has also recommended that this Court require that any future modifications of the architectural plans be submitted to the Special Master for approval prior to implementation. We are advised that the respondents do not object to these recommendations. Such recommendations are consequently approved by this Court, and the respondents are hereby directed to follow the recommendations.

The Special Master's report has also recognized that the respondents are required under *Crain* to provide a plan that will outline the security and personnel staffing, food service, and medical and dental service, as well as the various operational policies and procedures at the penitentiary. A plan is also required for the personnel who will be involved in the education and rehabilitation programs at the facility and their policies and procedures. The Master also requests that the Court direct the Secretary of the Department of Public Safety to conduct periodic "In Process Reviews" of these operational policies and procedures similar to those used in the development of the architectural plan. The Master recommends that this Court set a return date for the submission of such plans to him.

There appears to be no dispute on the part of the respondents that the foregoing internal staffing, policies, plans, and programs are required components of our *Crain* decision. It would be an anomaly to provide a physically acceptable facility and not provide proper plans, programs, procedures, and staff to operate it. We are aware that the respondents are working on such plans, programs, procedures, and staffing arrangements, and, in accordance with the Master's recommendations, we direct that the Secretary of the Department of Public Safety conduct periodic "In Process Reviews" of these plans, policies, procedures, and arrangements.

We conclude that such plans, policies, procedures, and arrangements should be submitted to the Special Master on or before December 7, 1991, with a copy to the petitioner's counsel, James F. Companion. This will provide an opportunity for review prior to the next hearing, which we set for February 4, 1992.

At that hearing, the respondents should also file a written status report as to the progress of the construction of the new facility. The Special Master and the petitioner's counsel shall also file, fifteen days in advance of the hearing, their comments with regard to the respondents' internal staffing policies, programs, plans, procedures, and arrangements.

We continue our on going general supervision of the project as a result of our obligation to remedy the constitutional deficiencies that we found in the penitentiary in our original *Crain* decision and reiterate syllabus point 2 of *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988): "This Court has a duty to take such actions as are necessary to protect and guard the Constitution of the United States and the Constitution of the State of West Virginia."

As previously indicated, we adopt the Special Master's recommendations and continue this case for further action consistent

---

**2.** The Special Master has in his custody the architectural plans and has agreed to the following modifications:

Revise Site Lighting
Revise Cell Window Specs
Redesign Medical/Mental Health Wing (delete 4,800 sq. ft.)
Redesign Prison Industries/Voc.Ed. (delete 6,000 sq. ft.)
Relocate Maximum Security Warden to 3rd Floor Administration Wing
Redesign Building H & I—Recreation Chapel/Library/Laundry/Academic Classrooms (delete 1,660 sq. ft.)
Incorporate Architectural and Structural Operatories
Redesign Minimum Security Housing Unit
Add Air Conditioning to All Housing
The modifications also cover certain construction time-lines on the project.

with what is set forth herein, until February 4, 1992.

Case continued with directions.