433 S.E.2d 526

**Robert Carl CRAIN, et al., Petitioners Below, Appellants,**

**v.**

**Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al., Respondents Below, Appellees.**

**No. 16646.**

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1993.

Decided July 16, 1993.

James F. Companion, Schrader, Byrd, Byrum & Companion, Barbara L. Baxter,

---

W.Va. Legal Services Plan, Inc., Wheeling, for petitioners below, appellants.

Rita A. Stuart, Sp. Asst. Atty. Gen., W.Va. Dept. of Corrections, Charleston, for respondents below, appellees.

## PER CURIAM:

In our most recent opinion of *Crain v. Bordenkircher*, 188 W.Va. 406, 424 S.E.2d 751 (1992) (*Crain IX*), entered on December 11, 1992, we directed the respondents[1] to submit to the Special Master and petitioners' counsel the completed operational procedures plan[2] for the new penitentiary at Mount Olive by March 1, 1993. We advised the parties to discuss with each other and with the Special Master any objections they had to the plan prior to reporting back to this Court. We set the matter for further hearing on May 4, 1993, at which time the parties could bring any unresolved objections to the Court's attention. Subsequently, we continued the hearing to June 1, 1993.

These ongoing hearings and opinions are a result of our initial finding in *Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986) (*Crain I*), that the West Virginia Penitentiary at Moundsville was constitutionally deficient. We ordered the respondents to develop a compliance plan to remedy the constitutional deficiency. We appointed Patrick D. McManus, a nationally recognized penologist, as Special Master to review the compliance plan and to report recommendations to this Court. Throughout the history of this litigation, we have been substantially aided and guided by the Special Master's reports and recommendations.

In *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988) (*Crain III*),[3] we rejected the respondents' compliance plan and indicated that a new penitentiary should be built. We described our ongoing jurisdiction to require correction of the unconstitutional conditions at the penitentiary in Syllabus Point 2:

> "This Court has a duty to take such actions as are necessary to protect and guard the Constitution of the United States and the Constitution of the State of West Virginia."

This Syllabus Point has been carried forward in all of our subsequent cases.

At the hearing on June 1, 1993, the respondents in their written status report to this Court advised us that the construction of the new penitentiary was proceeding on schedule to meet the July 1, 1994, date set in *Crain v. Bordenkircher*, 187 W.Va. 596, 420 S.E.2d 732 (1992) (*Crain VIII*). The respondents also represented that the parties are in agreement on most of the major administrative policy issues; however, the final plan is still incomplete. In their status report, the respondents state that the parties are in substantial agreement as to the following areas of the operational plan: (1) emergency services; (2) security and control; (3) access to the law library; (4) showers for disciplinary segregated inmates; (5) inmate benefit funds; and (6) good time credit. The respondents also stated that the Division of Corrections would seek American Correctional Association (ACA) accreditation for the Mount Olive facility within six to nine months after opening the facility.[4]

1. The parties have agreed to continue styling the respondents in this case as Donald E. Bordenkircher, Warden, who was in charge of the Moundsville Penitentiary, and Joseph McCoy, who was the Commissioner of the Department of Corrections, when the original litigation arose in the Circuit Court of Marshall County in 1981. Likewise, Robert Carl Crain, one of the inmates in the penitentiary, is retained as the petitioner in the style. *See Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986) (*Crain I*).

2. The plan, entitled "Mount Olive Operational Procedures," provides administrative guidelines

in regard to finances, personnel, inmates, and other aspects of prison management.

3. In *Crain v. Bordenkircher*, 187 W.Va. 596, 420 S.E.2d 732 (1992) (*Crain VIII*), we summarized our various opinions since *Crain I* relating to the transition of the penitentiary at Moundsville to the new facility at Mount Olive.

4. The precise statement in the respondents' status report to this Court filed May 28, 1993, which arose out of their meeting with the Special Master and counsel for the inmates, is: "It was also agreed [*sic*] that the Division of Corrections would seek ACA accreditation of the

The respondents represent that the parties still disagree over the following policies: (1) monitoring telephone calls; (2) identifying outgoing correspondence as being from a prison; (3) composition of the administrative segregation committee; (4) the nature and future use of administrative segregation; and (5) the need for a full-time dietician. In addition, the mental health, food service, health care, academic, vocational, work, and treatment programs still need to be finalized, and the current disciplinary policy is being reviewed by the Special Master. Both parties agree to allow the Special Master to arbitrate their remaining differences to the plan.

In conformity with our continuing supervisory role, we grant the respondents' motion to allow the parties to submit their remaining differences to the Special Master for arbitration. Furthermore, the respondents are ordered to submit the completed operational procedures plan to the Special Master and petitioners' counsel by November 15, 1993. The respondents also are directed to inform the Special Master as to the transition plan to the new facility. This matter will be set for a further hearing before this Court on January 11, 1994, at which time either party may present any remaining contested issues to this Court for final resolution. The respondents also are directed to report at the January hearing on the status of the construction of the new facility.

Relief directed and hearing scheduled.

Mount Olive facility within six to nine months after opening. This in effect would provide at least substantial compliance with the mandates of *Crain.*"