447 S.E.2d 275

Robert Carl CRAIN, et al., Petitioners Below, Appellants,

v.

Donald E. BORDENKIRCHER, Warden, West Virginia Penitentiary, et al., Respondents Below, Appellees.

No. 16646.

Supreme Court of Appeals of West Virginia.

Submitted June 28, 1994.

Decided July 14, 1994.

James F. Companion, Schrader, Recht, Byrd, Byrum & Companion, Barbara L. Baxter, W. Va. Legal Services Plan, Inc., Wheeling, for appellants.

Rita A. Stuart, Sp. Asst. Atty. Gen., W. Va. Div. of Corrections, Charleston, for appellees.

PER CURIAM:

On June 21, 1994, a status report was filed with this Court by the Division of Corrections, one of the respondents below, which detailed certain administrative rules for the Mount Olive Correctional Complex (MOCC), the new penitentiary.[1]

In addition to providing information, the respondents requested that we modify our June 25, 1992, decision which required the closing of the West Virginia Penitentiary at Moundsville (WVP) on July 1, 1994. The respondents ask that we extend the closure date by four months. The respondents report that the MOCC will be completed by September 2, 1994, and that all inmates will be transferred from the WVP to the MOCC by October 31, 1994. We grant the respondents' request, and extend the closure deadline by four months. This matter will be set for a further hearing before this Court on November 1, 1994.

I.

This Court detailed the deficiencies of the inmates' confinement at the WVP in *Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986) (*Crain I* ). In *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988) (*Crain III* ),[2] we ordered the construction of a new penitentiary to remedy these unconstitutional conditions. A Special Master, an expert penologist, was appointed to review the compliance plan. He has been reporting his recommendations to this Court. We continue to monitor the progress of the MOCC by ongoing hearings, as stated in the Syllabus of *Crain v. Bordenkircher*, 189 W.Va. 588, 433 S.E.2d 526 (1993) (*Crain X*):

> " 'This Court has a duty to take such actions as are necessary to protect and guard the Constitution of the United States and the Constitution of the State of West Virginia.' Syllabus Point 2, *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988)."

The most recent status report indicates approval of nearly all the administrative guidelines. However, the following policies are not approved as of yet and they may require some modifications.[3] First, the operational procedures for medical services recently were presented to the Division of Finance and Administration, the Special Master, and the appellants' counsel for review and comment. Second, operational procedures for food service are complete, but the Special Master and appellants' counsel have not had an opportunity to comment on them. However, the respondents assert that the Special Master's concerns were addressed. Third, certain operational procedures were revised concerning the classification policy and will be resubmitted for comment. Final-

---

1. Our most recent opinion of *Crain v. Bordenkircher*, 191 W.Va. 343, 445 S.E.2d 730 (1994), listed the areas that remained for the parties to finalize. We set this matter for further hearing on June 28, 1994, as part of this Court's continued monitoring of the construction of and transition to the MOCC.

2. In *Crain v. Bordenkircher*, 187 W.Va. 596, 420 S.E.2d 732 (1992) (*Crain VIII* ), we summarized the background of the litigation leading to the transition to the MOCC.

3. In accordance with our past practice, if there are areas of disagreement between the parties as to the administrative guidelines, they are to be submitted to the Special Master for resolution. *See Crain X, supra.* If the matter is not amicably resolved by the Special Master, then he files a written recommendation with this Court outlining a proposed resolution. *See Crain v. Bordenkircher*, 191 W.Va. 343, 445 S.E.2d 730 (1994).

ly, fourth, the operational procedure entitled "Unit Disciplinary Committee" is being prepared and will be submitted for review and comment. The respondents assure us that the transfer of inmates to the MOCC will not be delayed due to any changes which may be required to these remaining administrative rules.

## II.

At the hearing on June 28, 1994, the respondents in their written status report, advised this Court that they will be unable to meet the July 1, 1994, date set in *Crain v. Bordenkircher*, 187 W.Va. 596, 420 S.E.2d 732 (1992) (*Crain VIII* ). As previously stated, final completion of the facility is anticipated by September 2, 1994. By October 31, 1994, the Division of Corrections plans to have all of the inmates transferred to the new facility.

We are disturbed to find yet another request for an extension of time. Two years ago, in *Crain VIII*, 187 W.Va. at 598, 420 S.E.2d at 734, we granted the respondents an extension of time, and we urged them to work more diligently in completing the move to the MOCC:

"We remind the respondents that eleven years have passed since this case began; nine years since Judge Arthur Recht declared the prison conditions to be unconstitutional; six years since our first opinion in *Crain I;* and, four years since we ordered the prison closed by the 1 July 1992 (*Crain III* ). Although we recognize that the respondents are now taking all reasonable steps to comply with this Court's orders, because of the unconstitutional nature of WVP's conditions, we continue to require that these conditions be eliminated as soon as possible."

In the status report, the respondents fail to offer a satisfactory explanation as to why the contractors have delayed the opening of the new facility. The report states that at its June, 1994, meeting, the Regional Jail and Correctional Facility Authority Board (Board), was informed that "the contractors had assumed throughout construction that the June 23, 1994 date was for substantial completion with final completion to occur ninety (90) days thereafter." Such a critical misunderstanding this close to the anticipated completion date should never have occurred. The Board had the responsibility to monitor the contractors to ensure that the ordered completion date be met. We urge the Board to consider possible remedies available against the contractors for failing to complete the construction in a timely manner.

The report sets forth the updated schedule for the transition to the MOCC:

"Staff will begin the shakedown of the facility and on site training will commence on or about July 1, 1994. The Correctional staff will be able to learn the operational and technical aspects of the facility while the systems are being tested and adjusted by the contractors. This will be a beneficial hands on learning time for the staff in addition to the training the systems contractors will provide. The Division of Corrections will begin transferring inmates from the Penitentiary to Mount Olive in small groups as the facility comes on line. Assuming that final completion is achieved on September 2, 1994, the Division of Corrections will have transferred all of the inmates from the Penitentiary on October 31, 1994."

■ Accordingly, with reluctance, we allow an additional four months to close the WVP and transfer inmates to the MOCC, which means that the period for completion of the facility will end on October 31, 1994. This matter will be set for a further hearing before this Court on Tuesday, November 1, 1994. At that hearing, we expect a report that all matters relevant to the transfer to the MOCC are completed and that the administrative rules are finished. Should any condition arise which would prevent the transfer to the new facility by October 31, 1994, or the failure to finish the administrative rules, the parties immediately should report the same to this Court. It is possible that the failure to comply with the mandates

of this opinion may result in a rule to show cause for contempt.[4]

Relief directed and hearing scheduled.

BROTHERTON, C.J., dissents.

---

**4.** See *Crain I*, 176 W.Va. at 363 n. 17, 342 S.E.2d at 448 n. 17, as to contempt proceedings.