TAYLOR COUNTY COMMISSION

*v.*

MERLE SPENCER, LITA BARTLETT AND ELAINE BENNETT,
*Ballot Commissioners*, HONORABLE EDWARD T. LUFF,
*Judge Of The Nineteenth Judicial Circuit*

(No. 15013)

HELEN SPENCER, RUGSKI COFFMANN, JACK COFFMANN,
WILLIS COFFMANN AND ROBERT L. DUCKWORTH

*v.*

MERLE SPENCER, *et al., etc.,* GLENN SAPP, *President,*
TAYLOR COUNTY COMMISSION

(Nos. 15013 15020)

Decided December 18, 1981.

LaVerne Sweeney, for petitioner and appellant.

*Jones, Williams, West & Jones, Jerald Jones and Lewis A. Clark,* for respondents and appellees.

McGraw, Justice:

In these two cases, consolidated for decision, the Taylor County Commission appeals from an order of the Circuit Court of Taylor County which awarded a writ of mandamus to compel the Board of Ballot Commissioners of Taylor County to place the names of all candidates for the office of County Commissioner on all the ballots to be used in the county at the general election held November 4, 1980, and sought a writ of prohibition to restrain enforcement of the writ of mandamus. By order entered October 30, 1980, we denied the writ prayed for and affirmed the judgment of the circuit court for reasons to be stated in a written opinion. We set forth herein the reasons for our decision.

The facts of the case are not in dispute. On March 7, 1977, a petition was presented to the County Commission of Taylor County (hereinafter County Commission) requesting the modification of said County Commission. The petition read as follows:

> Since the government of Taylor County is vested in only three County Commissioners and since the out-lying regions of the County are not presently represented on the County Commission we, the undersigned voters of Taylor County, West Virginia, petition the County Commissioners of Taylor County to make application to the 1977 session of the West Virginia Legislature to modify the County Commission of Taylor County so that said Commission will include one Commissioner from each magisterial district.

Pursuant to the provisions of article 9, section 13, the County Commission entered an order on March 10, 1977, which stated, in part, that "the petition requested the commission to submit the petition to the Legislature to increase the Taylor County Commission to six members." The following day the petition was sent to the Clerk of the Senate with a letter from the president of the County Commission which contained the following statement:

On February 7, 1977, The County Commission of Taylor County, West Virginia, received a petition which appears to request a change in the number of County Commissioners in the county so that there will be one Commissioner for each magisterial district. There are presently six magisterial districts and three County Commissioners in the county.

On December 20, 1977, the County Commission, apparently acting in response to a recommendation from a consultant, redistricted the county, reducing the number of magisterial districts from six to three.

At the 1978 regular legislative session, the Legislature passed an enabling act providing for the reform of the County Commission. 1978 W.Va. Acts, ch. 112[1]. The

---

[1] Chapter 112 provides:

§ 1. legislative findings.

The Legislature hereby finds and declares that by a petition dated the seventh day of March, one thousand nine-hundred seventy-seven, at least ten percent of the registered voters of Taylor County have requested the reformation, alteration and moderation of the county commission of said county so that the number of members of said county commission shall be equal to the number of magisterial districts comprising said county. The Legislature further finds and declares that, by a letter dated the eleventh day of March, one thousand nine-hundred seventy-seven, said county commission has requested the Legislature to so reform, alter and modify the same, as required by the provisions of section thirteen, article nine of the constitution of this state. The Legislature further finds and declares that it fulfills the requirements of said section thirteen by the provisions of this act.

§ 2. Reformation, alteration and modification of Taylor County commission: composition; quorum; application of laws.

The county commission of Taylor County is hereby reformed, altered and modified such that there shall be three commissioners and each commissioner shall be elected by the voters of his magisterial district as provided in this act. A simple majority of said commissioners shall be a quorum for the transaction of business. All laws of this state not inconsistent with the provisions of this act shall apply to said county commission.

§ 3. Election of commissioners; terms; exceptoins.

At the general election to be held in the year one thousand nine-hundred eighty, there shall be elected by the voters of each magisterial district a commissioner of the Taylor County Commis-

language of the act is confusing, but essentially it provides for six county commissioners, each to be elected by the voters of his magisterial district. The modification was made contingent upon its approval by a majority of the voters of the county at the 1980 primary election. The act specifically required that the ballot include the following form:

For Modification of County Commission ☐

Against Modification
    of County Commission ☐

---

sion: Provided, That such election shall not apply to those magisterial districts represented by a commissioner, as of the effective date of this act, whose term of office would, notwithstanding the provisions of this act, not be subject to election in said year. The terms of the commissioners so elected shall begin on the first day of January, one thousand nine-hundred eighty-one, and shall be for six years, except that at the first meeting of the county commission following such election the commissioners so elected shall designate by lot, or otherwise in such manner as they may determine, one of their number, who shall hold his office for the term of two years, not less than one for four years, and one for six years, so that not less than one shall be elected every two years.

The commissioners of said county commission in office on the effective date of this act shall remain therein for the term for which they have been elected, unless sooner removed therefrom in the manner prescribed by law, and shall be eligible to succeed themselves for six-year terms.

§ 4. Submission to voters of question of reformation, alteration and modification of county commission.

At the primary election to be held in the year one thousand nine-hundred eighty, the question of the reformation, alteration and modification of the county commission as provided in this act shall be submitted to the voters of Taylor County voting at such election. Such question shall be so submitted on a separate ballot furnished by the county commission, in the following form:

§ 5.

For modification of county commission       ?
Against modification of county commission     ?

If a majority of the votes cast upon the question be "for modification for county commission" this act shall be and remain in full force and effect; but if a majority of such votes cast be "against modification of county commission," this act shall be of no further force and effect.

At the primary election held June 3, 1980, a special ballot was submitted to the voters of Taylor County. That ballot read as follows:

OFFICIAL BALLOT
COUNTY INITIATIVE
June 3, 1980

For Modification of County Commission ☐

Against Modification
of County Commission ☐

The purpose of modification is to provide for the election of three County Commissioners in Taylor County to be elected by the voters of his/her magisterial district rather than by the voters of the County at large.

A majority voted "For Modification of County Commission."

At the same primary election the voters of all of the magisterial districts of Taylor County nominated candidates for the office of county commissioner from the Central Magisterial District. As a result of the modification approval, the Ballot Commissioners of Taylor County directed that at the general election to be held on November 4, 1980, only the ballots of the Central Magisterial District contain the names of the nominees for county commissioner, the result being that the voters of the other magisterial districts would not be permitted to participate in the election of that officer.

On September 30, 1980, five citizens of Taylor County, residents of the three magisterial districts of the county, filed with the Circuit Court of Taylor County a petition for a writ of mandamus to compel the Board of Ballot Commissioners of Taylor County to place the name of petitioner Robert L. Duckworth, a candidate for the office of county commissioner, on all ballots to be used in Taylor County at the general election, so as to permit all of the voters in the county to participate in the election of a county commissioner from the Central District. The court

issued a rule to show cause why the writ should not be awarded, returnable on October 8, 1980.

On the date of the hearing, counsel for the County Commission filed a motion to recuse the circuit judge and to dissolve the rule. The motion was denied by the circuit court. The court also overruled a demurrer. A stipulation was filed which acknowledged that the facts and exhibits were admitted without objection. Upon consideration of the facts, the law and the arguments of the parties, the circuit court determined that the action of the Legislature in providing that county commissioners could be elected only by the voters of the magisterial districts which they represented was unconstitutional and awarded the writ. The ballot commissioners were ordered to place the names of the candidates for county commissioner on all the ballots to be used in Taylor County at the general election on November 4, 1980. The County Commission appealed from this order and petitioned this Court for a writ of prohibition to restrain its enforcement. The two issues briefed before this Court are the correctness of the circuit court's ruling on the constitutionality of the act modifying the county commission and the denial of the motion to recuse. An order denying the writ and affirming the judgment of the circuit court was entered by this Court on October 30, 1980.

I

Article 9, section 9 of the West Virginia Constitution establishes that "there shall be in each county of the State a county commission, composed of three commissioners." The framers of our constitution recognized that some counties might be better suited to a different form of government than that prescribed by the constitution. Article 9, section 13 provides:

> The legislature shall, upon the application of any county, reform, alter or modify the county commission established by this article in such county, and in lieu thereof, with the assent of a majority of the voters of such county voting at an election, create another tribunal for the transac-

tion of the business required to be performed by the county commission created by this article. Whenever a county commission shall receive a petition signed by ten percent of the registered voters of such county requesting the reformation, alteration or modification of such county commission, it shall be the mandatory duty of such county commission to request the legislature, at its next regular session thereafter, to enact an act reforming, altering or modifying such county commission and establishing in lieu thereof another tribunal for the transaction of the business required to be performed by such county commission, such act to take effect upon the assent of the voters of such county, as aforesaid. Whenever any such tribunal is established, all of the provisions of this article in relation to the county commission shall be applicable to the tribunal established in lieu of said commission. When such tribunal has been established, it shall continue to act in lieu of the county commission until otherwise provided by law.

In essence this provision contemplates the reorganization of the county government upon petition by, and with the approval of, the voters of a county. The legislative process is set in motion upon the filing of a proper petition, signed by ten percent of the voters of the county, with the county commission requesting the reformation of that body. The county commission is required by the constitution to submit the reformation petition to the Legislature and request the enactment of enabling legislation which will permit the voters of the county to cast their ballots either for or against the proposal.

The framers of this provision and the people of the state wisely chose to leave the ultimate determination of the form of government which would best serve the interests of the county in the hands of those most directly affected by it: the people of the county. The constitution provides for a standard county government in the form of a county commission, but vests in the voters of the county the power to choose an alternative tribunal to suit their

particular needs. When requested by the voters of the county, the Legislature may depart from the constitutional model for county government in a limited fashion so as to give a degree of flexibility to the county structure and to allow the citizens of the county to exercise a measure of local control over their government.

The Legislature may, in its wisdom, provide for model forms of alternative county governments by general law. Indeed, with artful redrafting and appropriate editing, the models for municipal government provided in W.Va. Code § 8-3-2 (1976 Replacement Vol.), might well be adapted to the county structure. We find no prohibition in the constitution against the exercise by county government of powers ordinarily associated with municipalities. Under the empowering language of article 9, section 11, county commissions "may exercise such other powers and perform such other duties ... as may be prescribed by law." The Legislature could frame general law which embodies the powers of both counties and cities in one local governing body, offering the citizens of the county an alternative to the traditional models of local government.

A general law providing model forms of county government would provide guidance for the citizens of counties who are dissatisfied with their existing form of county government and would tend to standardize reformation petitions. This would help avoid confusion about the Legislature's power and responsibilities with respect to reformation petitions. Of course, even absent such legislation, the people of the counties are free to modify their local government in any way which comports with the mandates of the constitution. W. Va. Const. art. 3, § 3. We simply think that legislation in this area would provide the people with a better understanding of the options available to them under our constitution. We turn now to the question of whether this petition and the subsequent enabling legislation approved by the voters of Taylor County is valid.

Article 9, section 13 clearly anticipates that when the Legislature responds by the enactment process to a

communication from a county commission that ten percent of the voters of the county have requested by petition an alternative form of county government, it has an obligation to see that the act upon which the people of the county will vote embodies the substance, spirit and intent of the petition. The use of the word "shall" connotes a mandatory duty on the part of the Legislature. Its role in the reformation process is to expedite, within constitutional parameters, the will of the citizens of the county by producing enabling legislation which reflects the stated preference of the petitioning voters and provides the other voters of the county an opportunity to approve or to reject that alternative to the existing form of government. In effect, the Legislature is obliged by the constitution to vindicate the desires and designs of the voters of the county. This it is constitutionally required to do and beyond this it cannot act.

In this sense, the power of the citizens of the county to petition for reformation of the county commission pursuant to article 9, Section 13 is not unlike a limited grant of the right of initiative, by which the power is reserved to the people to propose laws and to enact or reject them at the polls, either independent of or with only the indirect participation of the Legislature. *See generally* 42 Am. Jur. 2d *Initiative and Referendum* § 1 (1969); 82 C.J.S. *Statutes* § 115 (1936). The right of the people to enact and to approve or disapprove legislation under such a grant of authority is absolute and cannot be abridged directly or indirectly by the Legislature. *Farris v. Goss,* 143 Me. 227, 60 A.2d 908 (1948). *See also Baker v. Bosworth,* 122 Colo. 356, 222 P.2d 416 (1950); *Kelly v. Curtis,* 287 A.2d 426 (Me. 1972). The officers having charge of the machinery for bringing an initiative petition to a vote or for acting upon the petition are performing a purely ministerial duty and have no power to alter or amend the petition. *Bennett v. Drullard,* 27 Cal. App. 180, 149 P. 638 (1915); *Plymale v. Garner,* 147 W.Va. 293, 128 S.E.2d 185 (1962).

The clear intent of the petition here was to gain representation for each of the six magisterial districts of the county, thereby giving the voters of the outlying

regions of the county a voice in their local government. The petition sought to increase the number of commissioners to six so that each of the magisterial districts existing at the time the petition was submitted to the County Commission would be represented. It appears that the County Commission, as witnessed by the letter to the clerk of the Senate on March 11, 1977, also shared in this assessment of the petitioner's intent.

The legislative findings which preface Chapter 112 appear on their face to acknowledge the intent of the petition.

> "[A]t least ten percent of the registered voters of Taylor County have requested the reformation, alteration and modification of the county commission of said county so that the number of members of said county commission shall be equal to the number of magisterial districts comprising said county."

Section 3 of the act then provides for the election of additional county commissioners.

§ 3. Election of commissioners; terms; exception.

> At the general election to be held in the year one thousand nine hundred eighty, there shall be elected by the voters of each magisterial district a commissioner of the Taylor County commission: *Provided, That such election shall not apply to those magisterial districts represented by a commissioner, as of the effective date of this act, whose term of office would, notwithstanding the provisions of this act, not be subject to election in said year . . . .*
>
> *The commissioners of said county commission in office on the effective date of this act shall remain therein for the term for which they have been elected, unless sooner removed therefrom in the manner prescribed by law, and shall be eligible to succeed themselves for six-year terms.* (Emphasis added.)

Section 2 of the act, however, represents a substantial departure from the expressed intent of the voters of Taylor County. That provision states, in part, that

[t]he county commission of Taylor County is
hereby reformed, altered and modified such that
*there shall be three commissioners and each com-
missioner shall be elected by the voters of his
magisterial district.* (Emphasis added.)

There is nothing in the petition to indicate that the
petitioning voters of Taylor County desired to modify
their county government so as to create a commission
composed of three members, each of whom would be
elected by the voters of his magisterial district. Nor is
there any indication in the communication of the County
Commission to the Legislature of such a request. It
appears for the first time in the language of the act
itself.[2]

We believe that the Legislature intended to comply with
the intent of the citizens of Taylor County as expressed in
the petition, and create a county commission which would
represent all of the voters of Taylor County. At the time
this request was transmitted to the Legislature, the
record clearly showed that there were six magisterial
districts in the county and that the voters of the county
wanted each magistrial district to be represented on the
county governing body. We view the legislature's creation
of a county commission of "three members" to be a
clerical error which omitted the word "additional" so as to
prove for a six-member county commission.

Such a defect in the legislation could be easily cured so
as to render the enactment valid were it not for the fact
that the enabling legislation also provided for the election
of the county commissioners by the voters of the magiste-

---

[2] Although we cannot detect with certainty the origins of this wide
discrepancy between the intents and purposes expressed by the
voters of Taylor County in their petition and the terms of the act
passed by the Legislature, it appears that the act was modeled after
Chapter 10 of the 1887 Acts of the Legislature. That law, enacted
pursuant to the former article 8, section 29 of the constitution,
reformed the County Commission of Preston County to create a
commission consisting of eight members, each of whom would be
elected separately by the voters in each of the eight magisterial
districts in that county.

rial districts they would represent. As we noted above, this provision was not contemplated by the petition. The act did not clearly conform to the will of the voters as expressed in the petition.

Moreover, prior to the primary election held in 1980, the separate ballot form provided for in section 4 of Chapter 112 was supplemented with the following statement:

> The purpose of modification is to provide for the election of three County Commissioners in Taylor County to be elected by the voters of his/her magisterial district rather than by the voters of the County at large.

This explanation was published in local newspapers as the legal notice and was included upon the special ballot at the election. Obviously this proposal differs substantially from the reformation sought by the petition. It purports to authorize, under the imprimatur of law, the creation of a county commission different in form from the one sought by the petitioning voters. The presence of this "summary" of the enabling legislation on the ballot only compounded the problems engendered by the enactment itself.

We are of the opinion that there was a fundamental failure in procedure here with regard to the reformation of the county commission. The constitutional mandate embodied in article 9, section 13 specifically entitles the voters who petitioned for modification of their county government to have a vote upon a proposed reform which is consistent in substance and intent with the original petition. Here, however, the enabling legislation departed substantially from the reform proposal contained in the petition. It provided for a modification in the manner of electing county commissioners which was not requested by the voters who petitioned for the reformation. When the proposal was submitted to the voters of Taylor County for their approval, it did not reflect the intent of the original petition. The voters who approved the modification proposal as contained in the ballot did not cast their votes for the reformation of the County Commission as

requested by the original petition, but voted instead for something entirely different.

This Court will go to great lengths to ensure that the will of the people of a county, expressed through approval of an initiative, will be effected. But we cannot and will not approve an election wherein the enabling legislation did not encompass the modification sought by the petitioning voters and resulted in the approval by the electorate of a governmental different from the one sought. The deficiency in the enabling act and the deficiencies in the ratification process compel us to find that the constitutionally anticipated procedure was not sufficiently complied with so as to enable us to uphold the modification. Our decision invalidates these proceedings only to the stage where the original petition was submitted to the Legislature. The Legislature owes the people of Taylor County an opportunity to approve or reject that proposal and should enact enabling legislation which will provide that opportunity.

We note that we are unable to find in the discussion of the re-districting plan to reduce the number of magisterial districts in Taylor County form six to three, any indication that the County Commission took into account the fact that it had previously submitted a petition to the Legislature to modify the County Commission. We believe that the circumstances of record at the time a petition is filed is the record upon which the petition will proceed. The constitution does not contemplate that county commissions may subvert the process of reformation of county governments by simply manipulating the number of magisterial districts to defeat a properly filed petition.

In view of the foregoing, we find that the constitutional issue raised upon the circuit judge's ruling respecting the proper method for electing county commissioners is not fairly raised by this record. Our constitution requires us to decide only those issues fairly arising upon the record. W.Va. Const. art. 8, § 4. There being no such issue before us, we will not comment thereupon.

As a final matter, the petitioners assert that the circuit court judge was disqualified from hearing the case by reason of bias and prejudice against the petitioners and should have recused himself upon the filing of the petitioners' written motion for recusal on the day of the hearing. The petitioners contend that the circuit judge had admitted bias against the County Commission and had previously disqualified himself from a case involving that body. The petitioners also allege that the circuit judge was disqualified from acting on this case because of bias and prejudice against members of the County Commission, as evidenced by certain derogatory remarks he made concerning courtroom facilities. The petitioners contend that upon the filing of the motion for recusal, the circuit judge should have immediately halted the proceedings and arranged for another judge to hear the merits of the motion.

We held in *Stern Bros., Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977), that a judge before whom a disqualification motion is filed should not hear the merits of the motion. Procedures for disqualification of circuit court judges were set forth in Rule XVII of the Trial Court Rules for Courts of Record, adopted by this Court on February 8, 1979. In accordance with the rule set down in *Stern Bros.,* Rule XVII provides that upon the filing of a written motion of recusal at least seven days in advance of the trial date, a judge shall either voluntarily recuse himself or,

> "If * * * the involved judge does not desire to voluntarily recuse himself, then he shall:
>
> (a) Proceed no further in the matter; and
>
> (b) Transmit a copy of the motion and certificate to the Chief Justice of the Supreme Court of Appeals, together with a letter advising whether he will recuse himself from the proceeding or that a hearing on the matters surrounding the disqualification motion will be required . . . .
> T.C.R. Rule XVII A.(1).

The rule also provides, however, that

> [i]n the event the motion is filed less than seven days prior to the date set for trial, . . . the involved judge shall have an immediate hearing upon the motion for disqualification, allow the moving party to make a full record and shall then rule upon the motion for disqualification. If the judge overrules the motion for disqualification, he shall proceed with the case. If the motion is sustained, the judge shall proceed no further in the matter and shall forthwith transmit the motion and reason for his ruling to the chief justice who shall then appoint another judge . . . .
>
> T.C.R. Rule XVII A.(1)(c).

The record indicates that the petitioners' motion for recusal was not filed until the day of the trial. Under the foregoing language of Rule XVII, the circuit judge was under no obligation to halt the proceedings and request assignment of a temporary judge to hear the merits of the disqualification motion. He was expressly empowered to hear the motion on the spot and to rule upon it in the exercise of his judicial discretion.

Moreover, it appears that there was no ground for granting the disqualification motion. It appears that the case in which the circuit judge had previously disqualified himself was decided some eleven weeks prior to the entry of the order in this case and consisted of a dispute over the Taylor County Law Library, a project in which the circuit judge was directly involved and admitted having an interest. The petitioners do not claim that the circuit judge had an interest in the outcome of this action or that the two cases were so closely connected that an inference of prejudice could arise. Indeed, there appears to be no relation whatever between the two cases, except that the County Commission was a party to both actions. We cannot hold, as the petitioners apparently ask us to do, that once a judge recuses himself from hearing a case on the ground that he has an interest in the result, he is forever disqualified from acting in any unrelated case involving the same parties.

With respect to the remarks alleged to have been made by the circuit judge concerning the courtroom facilities, they apparently were made on jury selection days and were concerned with the inadequacy of the circuit courtroom facilities when compared with the facilities of the County Commission. The petitioners do not specify in what manner these remarks were "derogatory" to the County Commission and present no evidence or argument which shows that the circuit judge's dissatisfaction with the courtroom facilities biased him against the County Commission to the extent that he was unable to act on the issue presented here. As there is no showing of prejudice or bias, we conclude that there was no error in the circuit court's denial of the motion to recuse.

For the reasons stated herein, we conclude that Chapter 112 of the 1978 Acts of the West Virginia Legislature, purporting to reform, alter and modify the Taylor County Commission and to create a tribunal in lieu thereof is unconstitutional and void. The order of the Circuit Court of Taylor County which awarded a writ of mandamus to compel the Board of Ballot Commissioners to place the names of all candidates for the office of county commissioner on all of the ballots of Taylor County used in the general election held November 4, 1980, has been affirmed and the writ of prohibition prayed for has been denied.

*Judgment affirmed;*
*writ denied.*