674 S.E.2d 207 (2008)
THE COMMITTEE TO REFORM HAMPSHIRE COUNTY GOVERNMENT, Michael Hasty, Vera Anderson, Robert Shilling, Frank Wittacre, Kay Davis, Robert Walker, Shirley Carnahan, and Marvin Hott Plaintiffs Below, Appellees,
v.
THE HONORABLE RICHARD THOMPSON, Speaker of the West Virginia House of Delegates, and The Honorable Earl Ray Tomblin, President of the West Virginia Senate Defendants Below, Appellants.
No. 33851.
Supreme Court of Appeals of West Virginia.
Submitted October 7, 2008.
Decided December 11, 2008.
*209 Rita Pauley, Ray Ratliff, West Virginia State Senate, Joe Altizer, West Virginia House of Delegates, Charleston, for Appellants.
Robert M. Bastress, Morgantown, for Appellees.
BENJAMIN, Justice.[1]
The instant matter requires this Court to determine the scope of the Legislature's constitutional duty to act upon a petition to reform the county government of Hampshire County, West Virginia, which was presented to the Legislature in May 2003, pursuant to the provisions of Article IX, Section 13, of the Constitution of West Virginia. In a declaratory judgment action seeking an order directing the West Virginia Legislature to pass legislation enabling an election on a proposed reform of the government of Hampshire County, the Circuit Court of Kanawha County, West Virginia declared in an April 4, 2007, order that: (1) the Legislature has "a constitutional duty to process enabling legislation permitting Hampshire County voters to vote on the proposed reform of the government of Hampshire County;" and (2) that "[t]he proposed reform of the government of Hampshire County, including the creation of a tribunal of members elected from and by each of the County's election districts, would be constitutionally valid if and when it is approved by the voters of Hampshire County." For the reasons set forth herein, we reverse the circuit court's determination.

I.

FACTUAL AND PROCEDURAL HISTORY
In 2003, Appellees, the Committee to Reform Hampshire County Government, Michael Hasty, Vera Anderson, Robert Shilling, Frank Whitacre, Kay Davis, Robert Walker, Shirley Carnahan and Marvin Hott (hereinafter collectively "Appellees")[2] circulated a Petition seeking to reform the form of county government in Hampshire County, West Virginia pursuant to the provisions of Article IX, Section 13 of the Constitution of West Virginia *210 (hereinafter "Petition").[3] The Petition provided, in its entirety:
Petition for a Hampshire County Tribunal
We, the undersigned voters of Hampshire County, West Virginia, petition the West Virginia Legislature to cause to happen the creation of a Tribunal to replace the current Hampshire County Commission.
Tribunal Membership
The Tribunal shall be made up of one member from each Hampshire County voting district; only the registered voters in their respective district elect their member.
Term of Office
The term of each member shall be for a period of six years. Members' terms shall be staggered. Initially, the members first elected shall be required to draw lots to determine which two members shall serve 2-year terms, which three shall serve 4-year terms, which three shall serve 6-year terms.
Compensation
Each member shall be compensated $250.00 per Tribunal meeting attended and be reimbursed for expenses incurred while performing official duties as sanctioned by the Tribunal. No other benefits shall be awarded members.
Effective Date of Authority
The Tribunal, when elected and seated, shall replace the present Hampshire County Commission, whose terms of office shall expire immediately.
County Administrator
Following a national search, a county administrator shall be hired by the Tribunal to carry out the day-to-day business of the county as prescribed by the Tribunal. Said county administrator shall be an employee of and answerable to the Tribunal.
Upon obtaining signatures from ten percent (10%) of the registered voters in Hampshire County, Appellees presented the Petition to the Hampshire County Commission on March 21, 2003. By letter dated May 20, 2003, the Hampshire County Commission then requested the Legislature, pursuant to Article IX, Section 13, to enact enabling legislation permitting the citizens of Hampshire County to vote on the proposal and, if approved by the majority of voters, to implement the change.
During the 2004 legislative session, the next regular legislative session after the County Commission's request, the Senate passed an enabling bill, Senate Bill 727, allowing the matters contained in the Petition to be placed before the citizens of Hampshire County for a vote during the 2004 primary election. If approved by the majority of Hampshire County voters during that election, Senate Bill 727 provided that the requested Tribunal set forth in the Petition would replace the Hampshire County Commission on January 1, 2005, as the governing body of Hampshire County, West Virginia. Section 2 of Senate Bill 727 authorized the matters contained in the Petition and provided that, if reformation was approved by the voters during the 2004 primary election, the Tribunal members were to be elected during the 2004 general election. Finally, Senate Bill 727 contained a provision expressing serious reservation regarding the constitutionality of the form of government requested in the Petition, but noting that this Court's decision in Taylor County Commission v. Spencer, 169 W.Va. 37, 285 S.E.2d 656 (1981), precluded the Legislature from modifying the Petition's substance. Accordingly, Senate Bill 727 also contained a provision directing the Attorney General to institute a declaratory judgment action regarding the constitutionality of the Tribunal set forth in the Petition. However, neither Senate Bill 727 nor a similar bill introduced in the House of Delegates, House Bill 4396, passed the House of Delegates during the 2004 Regular Session of the West Virginia Legislature. Subsequent bills to enact the requested enabling legislation likewise failed during the 2005 and 2006 regular legislative sessions.
On August 23, 2005, Appellees filed a complaint for declaratory relief in the Circuit Court of Kanawha County seeking a declaration "that the defendants must process enabling *211 legislation permitting Hampshire County voters to vote on the proposed reform of the government of Hampshire County" and a declaration "that the proposed reform of the government of Hampshire County, including the creation of a tribunal of members elected from and by each of the County's election districts, would be constitutionally valid[.]" The defendants below and Appellants herein, the Honorable Richard Thompson[4], Speaker of the West Virginia House of Delegates, and the Honorable Earl Ray Tomblin, President of the West Virginia Senate, (hereinafter collectively "Appellants") responded by arguing that the circuit court lacked constitutional authority to order the Legislature to enact specific legislation and that the circuit court should hold "that the Legislature may enact, not enact or modify a petition received from a county commission which on its face proposes an unconstitutional form or election of a county commission or tribunal[.]" On cross-motions for judgment on the pleadings, the Appellants further argued that Article IX, Section 13 does not impose a mandatory duty upon the Legislature to automatically enact a bill to reform a county commission, that all members of the Legislature have the inherent right and duty to exercise judgment on all proposals before the Legislature, that legislative prerogative is not negated by the provisions of Article IX, Section 13 and that the Legislature may examine the constitutional parameters of any legislation before it. Additionally, the Appellants maintained that the Petition was submitted to the Seventy-Sixth Legislature and once that legislative term expired, a new petition must be resubmitted to a subsequent Legislature due to changes in the legislative composition and the numbers of Hampshire County voters.
By order entered April 4, 2007, the circuit court granted the declarations sought by Appellees. In this order, the circuit court concluded, as a matter of law, that the Legislature had a mandatory duty under Article IX, Section 13 to enact the enabling legislation requested in the petition and that this duty does not expire with the end of a legislative term. Further, the circuit court found that a county may alter its county commission by creating a tribunal whose members are elected only by the voters within each member's district. The circuit court also held that the citizens of each county have a constitutional right, guaranteed by Article III, Section 3[5] and Article IX, Section 13 of the Constitution of West Virginia to alter and reform their mode of county governance into any democratically elected form. This appeal follows.[6]

II.

STANDARD OF REVIEW
The primary question presented herein involves the appropriate construction of Article IX, § 13 of the Constitution of West Virginia. We have previously held that "[q]uestions of constitutional construction are in the main governed by the same general rules applied in statutory construction." Syl. pt. 1, Winkler v. State School Bldg. Auth., 189 W.Va. 748, 434 S.E.2d 420 *212 (1993). As such, our review of the circuit court's decision herein is plenary. See, Syl. pt. 1, Chrystal R.M. v. Charlie A.L., 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review.").

III.

DISCUSSION
The fundamental question to be resolved herein is what requirements, if any, are imposed upon the Legislature by Article IX, Section 13 of the Constitution of West Virginia to act upon a petition to reform a county government. Article IX, Section 13 provides, in its entirety:
The Legislature shall, upon the application of any county, reform, alter or modify the county commission established by this article in such county, and in lieu thereof, with the assent of a majority of the voters of such county voting at an election, create another tribunal for the transaction of the business required to be performed by the county commission created by this article. Whenever a county commission shall receive a petition signed by ten percent of the registered voters of such county requesting the reformation, alteration or modification of such county commission, it shall be the mandatory duty of such county commission to request the Legislature, at its next regular session thereafter, to enact an act reforming, altering or modifying such county commission and establishing in lieu thereof another tribunal for the transaction of the business required to be performed by such county commission, such act to take effect upon the assent of the voters of such county, as aforesaid. Whenever any such tribunal is established, all of the provisions of this article in relation to the county commission shall be applicable to the tribunal established in lieu of said commission. When such tribunal has been established, it shall continue to act in lieu of the county commission until otherwise provided by law.
W. Va. Const. art. IX, § 13.
Before this Court, Appellants argue that the circuit court erred in failing to acknowledge the Legislature's inherent authority to exercise discretion in the enactment process by finding that Article IX, Section 13 imposes a mandatory duty upon the Legislature to perform a purely ministerial act. The exercise of this discretion includes, according to the Appellants, the Legislature's duty to uphold our Constitution, a duty which is not superceded by the citizens of West Virginia's right to reform government as guaranteed by the provisions of Article IX, Section 13. Appellants further argue that the Tribunal proposed in the Petition would be unconstitutional and that the circuit court erred by finding that the Legislature had a constitutional duty to enact unconstitutional legislation.[7] Finally, Appellants argue that the circuit court erred in finding that the Legislature's duty under Article IX, Section 13 does not expire at the end of the legislative session in which a petition for reformation is received because bills not passed during a legislative session must be re-introduced in subsequent sessions and the Legislature's composition changes every two years.
*213 In response, Appellees argue that the Legislature has a mandatory duty, under Article IX, Section 13 to enact enabling legislation to permit the voters of Hampshire County to vote on the proposed alternative form of government set forth in the Petition.[8] Appellees rely heavily on this Court's opinion in Taylor County Commission v. Spencer, 169 W.Va. 37, 285 S.E.2d 656 (1981), in support of their argument that the Legislature had a non-discretionary duty to enact enabling legislation which would submit the Petition's proposed alternative form of government to the voters of Hampshire County unaltered. In response to arguments that a court cannot order the Legislature to enact specific legislation, Appellees maintain that a court may interpret our Constitution to determine a legislative duty without intruding upon legislative prerogative.[9] Appellees respond to the arguments regarding the constitutionality of the proposed reform by arguing that it is their indefeasible right to reform, alter or abolish their government into any democratically elected form. In essence, Appellees argue that to require the alternative form of government to comply with constitutional provisions governing county commissions negates their right to alter or reform their government in the manner they see fit. Finally, Appellees argue that the Legislature's duty under Article IX, Section 13 does not expire at the end of the legislative term because this Court has previously "enforced constitutional duties on the Legislature that have extended past the existence of a single Legislature."[10]
Thus, we are squarely presented with the question of the duties imposed upon the Legislature by Article IX, Section 13. It is axiomatic that "in every case involving the application or interpretation of a constitutional provision, analysis must begin with the language of the constitutional provision itself." State ex rel. Mountaineer Park, Inc. v. Polan, 190 W.Va. 276, 283, 438 S.E.2d 308, 315 (1993). In State ex rel. City of Princeton v. Buckner, 180 W.Va. 457, 377 S.E.2d 139 (1988), this Court discussed at length the principles governing the construction of constitutional provisions. Therein we explained:
that "[t]he fundamental principle in constitutional construction is that effect must be given to the intent of the framers of [the constitutional amendment] and of the people who ratified and adopted it." State ex rel. Brotherton v. Blankenship, 157 W.Va. 100, 108, 207 S.E.2d 421, 427 (1973); see also syl. pt. 4, State ex rel. Smith v. Kelly, 149 W.Va. 381, 141 S.E.2d 142 (1965); syl. *214 pt. 4, State ex rel. Morgan v. O'Brien, 134 W.Va. 1, 60 S.E.2d 722 (1948). . . .
Questions of constitutional construction are governed by the same general rules as those applied in statutory construction. State ex rel. Brotherton v. Blankenship, 157 W.Va. 100, 108, 207 S.E.2d 421, 427 (1973). It is a well established principle of constitutional construction that "[w]here a provision of a constitution is clear in its terms and of plain interpretation to any ordinary and reasonable mind, it should be applied and not construed." Syl. pt. 3, State ex rel. Smith v. Gore, 150 W.Va. 71, 143 S.E.2d 791 (1965). See also Ray v. McCoy, 174 W.Va. 1, 3, 321 S.E.2d 90, 92 (1984).
Moreover, a cardinal rule of statutory construction, which of course applies to the construction of constitutional provisions as well, is that a statute, or in this case a constitutional amendment, must be considered in its entirety, with effect given, if possible, to every word or phrase within the provision. Diamond v. Parkersburg-Aetna Corp., 146 W.Va. 543, 553-54, 122 S.E.2d 436, 443 (1961). A constitutional amendment will supersede any inconsistent portions of antecedent constitutional or statutory provisions, as "`the latest expression of the will of the people.'" State ex rel. Kanawha County Building Commission v. Paterno, 160 W.Va. 195, 203, 233 S.E.2d 332, 337 (1977). (citation omitted)
Buckner, 180 W.Va. at 461-2, 377 S.E.2d at 143-4. In examining the language of our Constitution, "[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution." Syl. pt. 3, State ex rel. Casey v. Pauley, 158 W.Va. 298, 210 S.E.2d 649 (1975).
Thus, we must begin with the language of the first two sentences which comprise Article IX, Section 13. The first sentence of this constitutional provision states:
The Legislature shall, upon the application of any county, reform, alter or modify the county commission established by this article in such county, and in lieu thereof, with the assent of a majority of the voters of such county voting at an election, create another tribunal for the transaction of the business required to be performed by the county commission created by this article.
(Emphasis added). Under the clear and unambiguous language contained in this first sentence, the only mandatory duty imposed on the Legislature by Article IX, Section 13 is the duty to create another tribunal in lieu of the current county commission after a majority of voters in the county have assented to the same  something which has not happened here. A preceding petition for reformation alone does not trigger this directive for legislative action under the plain language of this constitutional provision. Rather, the petition seeking reformation is an initial step in a process which may lead to such an election. The process which may lead to the triggering election is set forth in the second sentence of Article IX, Section 13. This second sentence governs the submission of a petition for reformation and action thereon. This sentence provides:
Whenever a county commission shall receive a petition signed by ten percent of the registered voters of such county requesting the reformation, alteration or modification of such county commission, it shall be the mandatory duty of such county commission to request the Legislature, at its next regular session thereafter, to enact an act reforming, altering or modifying such county commission and establishing in lieu thereof another tribunal for the transaction of the business required to be performed by such county commission, such act to take effect upon the assent of the voters of such county, as aforesaid.
(Emphasis added). The only mandatory duty clearly imposed by this sentence is imposed upon the county commission, not the Legislature. The county commission is required, upon receipt of a petition from ten percent of the registered voters of the county to request the Legislature at its next regular session to enact enabling legislation which would take effect upon the assent of the majority of registered voters. Thus, the receipt of the petition by the Legislature is plainly deemed only to be a request to act.
*215 The term "request" is defined, when used as a verb as "to ask or beg (someone) to do something" and "the act of asking for something to be given or done, esp. as a favor or courtesy; solicitation or petition" when used as a noun. 1636 Random House Webster's Unabridged Dictionary (2d. Ed.1998). Thus, it follows that the person or entity being requested to do something must have the discretion as to whether or not to act. Article IX, Section 13's use of the term "request" demonstrates in a plain and simple manner that the Legislature retains its discretion to act or not to act upon the request being made and that the submission alone of a petition for reformation does not compel a ministerial act on the part of the Legislature. Further, even if such request would impose a duty on the Legislature to do something, that duty is limited to commencing the legislative process with respect to the matters set forth within a petition for reformation. Accordingly, when the Legislature receives a request to act upon a Petition to reform a county government, only the legislative deliberative process is triggered. If this second sentence was intended to mean that the Legislature has a non-discretionary duty to enact legislation in accordance with the terms of the Petition, different language would have been used. For example, the second sentence could have stated that upon receipt of petition for reformation of county government, the Legislature shall enact enabling legislation in accordance with the terms set forth in the petition with such legislation to become effective upon the assent of the majority of registered voters of the county. However, it does not. Likewise, if Article IX, Section 13 imposed a purely ministerial duty upon the Legislature to enact legislation authorizing the matters set forth in a petition for reformation, it would also have imposed a like duty on the Governor to sign any such bill passed by the Legislature into law. It does not.
Pursuant to the second sentence of Article IX, Section 13, a request to act upon a petition for reformation of county government triggers the legislative process. This deliberative process necessarily includes an examination of the proposal to verify compliance with constitutional provisions in light of the third sentence of Article IX, Section 13 which provides, "[w]henever any such tribunal is established, all of the provisions of this article in relation to the county commission shall be applicable to the tribunal established in lieu of said commission." To find that the Legislature has no discretion in deliberating whether to enact enabling legislation to authorize the reform of county government upon receipt of a petition, including whether the matters set forth in the petition would be constitutional, would lead to bizarre and unacceptable results. For example, suppose the requisite ten percent of voters of Hampshire County approved a petition to reform their county commission to be comprised solely of white males owning no less than 100 acres of property within the county. Under Article IX, Section 13, the county commission must then request the Legislature to enact appropriate enabling legislation. Should the Legislature be required to enact legislation enabling such blatantly unconstitutional reformation? We think not and cannot find Article IX, Section 13 was ever intended to create such an absurd result.
In the instant matter, the Hampshire County Commission complied with the provisions of Article IX, Section 13 by presenting the Petition to the Legislature and requesting legislative action, thereby triggering the legislative process. Incumbent in the legislative process was the examination of the proposal to determine whether it may have had constitutional deficiencies. The Legislature did so. Indeed, the third sentence of Article IX, Section 13 recognizes that the constitutional provisions applicable to county commissions shall also apply to any tribunal created thereunder.
Nor do we find that our decision in Spencer compels the Legislature to pass legislation enabling a reformation when presented with a petition for reformation of county government. In Spencer, we stated that Article IX, Section 13:
contemplates the reorganization of the county government upon petition by, and with the approval of, the voters of a county. The legislative process is set in motion upon the filing of a proper petition, *216 signed by ten percent of the voters of the county, with the county commission requesting the reformation of that body. The county commission is required by the constitution to submit the reformation petition to the Legislature and request the enactment of enabling legislation which will permit the voters of the county to cast their ballots either for or against the proposal.

* * *
When requested by the voters of the county, the Legislature may depart from the constitutional model for county government in a limited fashion so as to give a degree of flexibility to the county structure and to allow the citizens of the county to exercise a measure of local control over their government.
* * *

Article 9, section 13 clearly anticipates that when the Legislature responds by the enactment process to a communication from a county commission that ten percent of the voters of the county have requested by petition an alternative form of county government, it has an obligation to see that the act upon which the people of the county will vote embodies the substance, spirit and intent of the petition. The use of the word "shall" connotes a mandatory duty on the part of the Legislature. Its role in the reformation process is to expedite, within constitutional parameters, the will of the citizens of the county by producing enabling legislation which reflects the stated preference of the petitioning voters and provides the other voters of the county an opportunity to approve or to reject that alternative to the existing form of government. In effect, the Legislature is obliged by the constitution to vindicate the desires and designs of the voters of the county. This it is constitutionally required to do and beyond this it cannot act.
Spencer, 169 W.Va. at 43-5, 285 S.E.2d at 660-1. Spencer makes clear that the receipt of a request for reformation triggers the legislative process. Id. at 43-4, 285 S.E.2d at 660-1. The legislative process necessarily includes submission of a bill, deliberation in committee, a vote on the bill by both houses of the Legislature and, if the bill obtains the approval of the majority of members of both houses of the Legislature, submission of the bill to the governor for his approval or veto. It is only after a bill has passed both houses and been endorsed by the governor that it becomes law. A bill may fail at any point in the legislative process.
The circuit court apparently found, as noted by Appellants and argued by Appellees, that the language from Spencer cited above imposes a mandatory duty upon the Legislature to enact legislation authorizing the reformation set forth in the petition as presented effective upon the assent of the majority of voters of Hampshire County. However, our holding in Spencer was not so broad. It is well settled in this state that the holdings of this Court are set forth in the syllabus of our opinions. Syl. pt. 13, State ex rel. Medical Assurance v. Recht, 213 W.Va. 457, 583 S.E.2d 80 (2003); Syl. pt. 2, Walker v. Doe, 210 W.Va. 490, 558 S.E.2d 290 (2001). The sole syllabus point of Spencer states:
Article 9, section 13 of the state constitution, providing for the reformation, alteration or modification of the county commission, clearly anticipates that when the Legislature responds by the enactment process to a communication of a county commission to the effect that ten percent of the voters of the county have requested by petition an alternative form of county government, it has an obligation to see that the act upon which the people of the county will vote embodies the substance, spirit and intent of the petition.
Syl., Spencer, 169 W.Va. 37, 285 S.E.2d 656 (emphasis added). This holding does not state that the Legislature is required to respond with a specific legislative result. To the contrary, it states that "when the Legislature responds by the enactment process" to a request for reformation that the enactment upon which the particular county's voters will ultimately vote must embody "the substance, spirit and intent of the petition" initially presented to the Legislature.[11] Our holding in *217 Spencer confirms that the Legislature retains its discretion to refuse to enact enabling legislation, but finds that when the Legislature does enact enabling legislation, such legislation must conform to the petition initially presented. To the extent the dicta contained in Spencer may be read to impose a mandatory duty upon the Legislature to enact legislation upon the mere presentation of a petition for reformation, it is hereby clarified. Spencer does not require that the Legislature enact enabling legislation, only that if the Legislature chooses to enact enabling legislation, the enabling legislation must conform to the substance, spirit and intent of the petition for reformation initially presented. To read Article IX, Section 13 as imposing a mandatory duty upon the Legislature to enact whatever is presented to it in a petition to reform county government thwarts the legislative process and the fundamentals of our system of government.
When read together, the first and second sentences of Article IX, Section 13 evidence a clear intention that the Legislature's mandatory duty to create a tribunal in lieu of the constitutionally established county commission is triggered after legislation enabling a county election on the proposed reformation has passed, the election takes place and a majority of the county's voters agree to the proposed reformation. Until all three steps of this process are complete, no mandatory, non-discretionary duty can exist. The necessity of the prior assent of a majority of the county's voters is emphasized by the repetition in both sentences that the creation of a tribunal in lieu of the constitutionally created county commission does not take effect until such vote has occurred. The language of the first and second sentences of this constitutional provision provides that once the Legislature responds by enacting legislation authorizing a county's citizens to vote on a petition for reformation, it must authorize the changes proposed in the petition for reformation upon the assent of the majority of the county's voters.
Accordingly, we now hold that Article IX, Section 13 of the Constitution of West Virginia does not require the Legislature to enact legislation enabling the reformation of county government upon receipt of a petition for reformation. Receipt of a request from a county commission to act upon a petition signed by ten percent of that county's voters to reform the county's government simply triggers the legislative process. The Legislature retains its discretion to approve or reject a bill authorizing a county-wide election on the requested reformation. As such, we find that upon receipt of a petition for reformation of county government pursuant to the provisions of Article IX, Section 13 of the Constitution of West Virginia, the Legislature may not be compelled to approve legislation authorizing a county-wide election on the reformation proposed in the petition where the Legislature concludes that the proposed reformation would violate the Constitution of West Virginia.
Finally, we hold that the circuit court erred in finding that a petition for reformation does not expire at the end of a legislative term. Article IX, Section 13 specifically references the presentation of a petition for reformation to the Legislature "at its next regular session[.]" Under our law, legislative sessions occur annually, the composition of the Legislature may change every two years and bills do not automatically carry over from legislative session to legislative session. W. Va. Const. art. 6, §§ 2, 3, and 18; House Rule 92a. The framers were aware of this system at the time Article IX, Section 13 was enacted. As such, inclusion of the phrase "at its next regular session" indicates an intent that the same Legislature that is in power at the time a petition for reformation of county government is authorized will be the Legislature which determines whether the requested reformation should be presented to the voters. Indeed, the numbers of registered voters in a county may change from legislative term to legislative term impacting the validity of the petition presented. Recognizing the impact of changes in legislative membership and voter numbers would have on a petition, a finding that a petition is valid for only the term of the Legislature in which it is initially presented is required both by the language of *218 Article IX, Section 13 itself and by practical realities.[12] As such, we now hold that if a petition for reformation of county government is presented to the Legislature pursuant to Article IX, Section 13 of the Constitution of West Virginia and the legislative process does not result in the enactment of enabling legislation prior to the end of the legislative session, then, in order for a subsequent Legislature, during its two year term, to address the issue, a new petition must be submitted.

IV.

CONCLUSION
For the reasons set forth herein, the April 4, 2007, order entered by the Circuit Court of Kanawha County is reversed.
Reversed.
NOTES
[1] Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.
[2] The Committee to Reform Hampshire County Government is an association of citizens who seek to alter and reform the government of Hampshire County pursuant to the provisions of Article IX, Section 13 of the Constitution of West Virginia. The individual Appellees are citizens and residents of Hampshire County who are affiliated with the Committee to Reform Hampshire County Government.
[3] The entire text of this constitutional provision is set forth in Section III, infra.
[4] The underlying action was initially instituted against Robert S. Kiss, the then-Speaker of the House of Delegates. Richard Thompson has since succeeded Mr. Kiss as Speaker of the House of Delegates and is now the named party herein.
[5] This constitutional provisions provides:

Government is instituted for the common benefit, protection and security of the people, nation or community. Of all its various forms that is the best, which is capable of producing the greatest degree of happiness and safety, and is most effectually secured against the danger of maladministration; and when any government shall be found inadequate or contrary to these purposes, a majority of the community has an indubitable, inalienable, and indefeasible right to reform, alter or abolish it in such manner as shall be judged most conducive to the public weal.
W. Va. Const. art. III, § 3.
[6] An April 24, 2007, resolution was passed by the Hampshire County Commission declaring the Petition void due to an increase in the number of Hampshire County voters such that the Petition no longer represented the constitutionally required ten percent (10%) of registered voters. Upon receipt of the April 24, 2007, resolution, Appellants sought relief from the April 4, 2007 order. By order dated August 16, 2007, the circuit court denied the motion for relief from judgment, dissolved a previously granted stay in the period to appeal the April 4, 2007, order and directed that all appeals be filed by October 9, 2007.
[7] Appellants question the constitutionality of the Petition's provision for Tribunal members to serve terms less than six years and to be elected by district rather than by county-wide election. Appellants additionally question the constitutionality of the Petition's provision that Tribunal members be elected from each "voting district." The Petition does not define what constitutes a "voting district" and our law defines several different types of "voting districts." Appellees respond that the Petition contemplated the referenced "voting districts" to coincide with those created by W. Va.Code § 3-1-9(d) (2007) for the purpose of electing political party executive committees. We agree with Appellants that there is absolutely no way to know that the Petition contemplated such a definition of voting district from the language contained in the Petition itself. Though not raised by Appellants, another potential constitutional deficiency in the Petition is the provision that the terms of the initial Tribunal members would not be determined until after their election through the process of drawing lots at the first Tribunal meeting. Under such a procedure, a voter would be forced to cast a vote for a tribunal member without knowledge of the length of the term the member would serve.
[8] However, Appellees also state in their brief before this court that "[t]he Legislature can certainly rely on its judgment that a proposed reform is unconstitutional as a basis to refuse to submit it to a county's voters." The concession that the Legislature can rely upon its judgment to reject an unconstitutional reform contradicts the circuit court's finding that the Legislature has a mandatory duty to enact enabling legislation. A mandatory, ministerial duty to enact enabling legislation, as advocated by Appellees and found by the circuit court, negates any element of legislative discretion.
[9] It is important to note that in the cases Appellees rely upon, this Court discussed the parameters of constitutional provisions but in no instance ordered the Legislature to perform a specific act. See, e.g., Crain v. Bordenkircher, 180 W.Va. 246, 248, 376 S.E.2d 140, 142 (1988), modified by Crain v. Bordenkircher, 187 W.Va. 596, 420 S.E.2d 732 (1992), modified by Crain v. Bordenkircher, 191 W.Va. 583, 447 S.E.2d 275 (1994) (per curiam) (ordering that the state penitentiary at Moundsville be closed due to unconstitutional conditions in the hopes that the closure order will "set in motion the procedures that will eliminate the unconstitutional conditions. We can only hope that with the beginning of a new legislative session and the election of a new executive, action will be taken to construct a new facility that will meet constitutional standards."); West Virginia Education Assoc. v. The Legislature of the State of West Virginia, 179 W.Va. 381, 383, 369 S.E.2d 454, 456 (1988) ("We do not today order the Governor to do any act. We do not today order the Legislature to do any act. The law presumes the Governor to know his duty when faced with an unconstitutional budget. The law presumes the Legislature to know its duty too.") (footnotes omitted); Pauley v. Kelly, 162 W.Va. 672, 707, 718-19, 255 S.E.2d 859, 878, 883-4 (1979) (finding that in light of the constitutional duty to provide a thorough and efficient education, the educational financing system cannot be discriminatory and ordering the addition of legislative leaders as party defendants in the underlying litigation so that the record could be fully developed as to whether the financing system at issue is constitutionally valid). In none of these cases did this Court order the passage of specific legislation.
[10] See note 9, supra.
[11] In Spencer, the enabling enactment differed materially from the reformation petition initially presented.
[12] Though not impacting the matter currently before this Court, we recognize that during the 2008 regular legislative session, the West Virginia Legislature enacted Senate Bill 784 which sets forth guidelines governing the contents of petitions for reformation, the timing of their presentation and the scope of legislative review.